Date signed March 30, 2006



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| IN RE: | * | |
| Willie Tripp | * | Case No. 05-26579-SD |
| | | Chapter 13 |
| Debtor | * | |
| * * * * * * * | | |
| Willie Tripp | * | |
| Movant | * | |
| v. | * | Adversary No. 05-1868-SD |
| Middle Branch Marina, Inc. | * | |
| Respondent | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MEMORANDUM GRANTING PLAINTIFF'S EMERGENCY
MOTION TO ENFORCE ORDER FOR TURNOVER
OF 1986 24' IMPERIAL BOAT AND MANDATING PLAINTIFF
TO SURRENDER TITLE OF SAID BOAT TO THE DEFENDANT

**BACKGROUND**

The matter before the court is Plaintiff's Emergency Motion Commanding the United States Marshall to Enforce the Order Granting the Motion Directing Turnover of Debtor's 1986 24' Imperial Boat (the "Motion").  On July 22, 2005, Willie Tripp, the

Debtor, filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor owns a 1986 24' Imperial Boat (hereinafter, the "Boat"). The Debtor houses the boat at a slip maintained by the Middle Branch Marina, Inc. The Debtor, at the time the petition was filed, owed the Marina approximately $830 in unpaid slip fees, said debt has been duly scheduled in Debtor's Schedule F. On August 16, 2005, the Debtor attempted to remove his boat from the Marina, but the Debtor's exit was blocked by employees of the Marina.

In response, the Debtor filed an adversary complaint against the Marina seeking, *inter alia*, turnover of estate property, namely, the boat. Contemporaneously with his Complaint, the Debtor filed an emergency request for turnover of the Boat. On September 19, 2005, a hearing was held on the emergency request. At the hearing, the Debtor, via Counsel, acknowledged that the Marina held a garagement's lien on the boat. Because a garagement's lien is a possessory lien, the Debtor proposed, upon turnover of the boat, the Court grant a "statutory lien" for the benefit of the Marina in order to provide for adequate protection. Debtor's request was denied, however, because he failed to show irreparable harm that would occur if preliminary relief was not granted, since the Marina could not sell the boat without court approval. The court did note that slip fees may continue to accrue in the interim, as provided for by agreement or state law, until the problem was resolved. Finally, the court instructed a Mr. Cao, the apparent owner of the Marina, to obtain the assistance of counsel in order to resolve this matter expeditiously. The Marina failed to answer Debtor's complaint. As a result, on October 25, 2005, the Debtor filed a Motion for default judgment directing turnover of the Boat. The Motion was granted by Order Granting Motion for Entry of Judgment by Default and

Order Directing Turnover of Debtor's 1986 24' Imperial Boat entered on January 19, 2006 (the "Order").  The Order states in pertinent part:

> ORDERED, that the Motion for Entry of Judgment by Default and Order Directing Turnover of Debtor's 1986 24' Imperial Boat is hereby GRANTED, and it is further
>
> ORDERED, that Middle Branch Marina, Inc., is to immediately release to the Debtor his 1986 24' Imperial Boat, and it is further
>
> ORDERED, that Middle Branch Marina shall retain a statutory lien upon the Debtor's 1986 24' Imperial Boat for storage fees owed by the Plaintiff, Willie Tripp, as reflected in Middle Branch Marina's proof of claim.

According to the uncontested allegations of the Motion, on January 26, 2006, the Plaintiff, with Order in hand, attempted to retrieve the Boat from Middle Branch Marina, but the on-site manager refused to allow the Plaintiff to recover his boat.  Subsequently, the Plaintiff filed this Motion. On February 13, 2006, in the main bankruptcy case, the court entered an order confirming the Debtor's Amended Chapter 13 plan wherein the Debtor scheduled the Respondent as a priority creditor for payment in full under his Plan.

## **DISCUSSION**

In *Tidewater Fin. Co. v. Moffett* (*In re Moffett*), 356 F.3d 518, 523 (4th Cir. 2004), the Fourth Circuit held that the right to redeem property that is in the possession of a secured creditor at the time the petition is filed, remains property of the estate.  In that case, shortly after a secured creditor lawfully repossessed Debtor's car, the debtor filed a petition under Chapter 13 and demanded possession of the car. The creditor sought relief, but the bankruptcy court ordered the creditor to return the car to the debtor. On appeal, the Fourth Circuit found that the repossession did not terminate the debtor's equitable interests in the car and that the repayment plan adequately protected the

3

creditor's security interest.  Under 11 U.S.C.S. § 362, the debtor's bankruptcy estate included all of her legal and equitable interest in property, namely, the Debtor's right of redemption, which was sufficient to subject the creditor to the automatic stay and turnover provisions.  More critically, the Court found that the creditor was adequately protected because the Chapter 13 plan provided a one hundred percent payoff to the creditor in order to cure the delinquency with payments made over the course of the plan. While the reorganization plan did not provide for a lump sum payment, 11 U.S.C. § 1322(b) permitted the debtor to modify the right of the secured creditor and to cure the default. Therefore, the Court affirmed the Bankruptcy Court's order for turnover and allowed the Debtor to take possession of the vehicle.

The case *sub judice* offers similar operative facts as those present in *Moffett*.  In both cases the secured creditor was in possession of the collateral at the time the bankruptcy case was filed and both Debtor's proposed to cure the arrearages through their respective chapter 13 plans.

However, a key difference exists between *Moffett* and the current case.  In *Moffett* the debt was secured by a purchase money Security Agreement.  Consequently, the creditor enjoyed a self-perfecting lien that was not impaired upon turnover of the collateral to the Debtor.  By contrast, in the instant case, the creditor only holds a possessory lien upon the collateral, namely, a garagement's lien.  As a result, any protection the creditor may enjoy prior to the turnover of the collateral will evaporate upon the surrendering of the property. While it is true that the initial order for turnover purported to create a statutory lien for the benefit of the creditor, such a lien would be unperfected.  More importantly, if the Debtor was to exercise his right to dismiss the

Chapter 13 case under 11 U.S.C. § 1307(b), the creditor will be saddled with a non-perfected non-possessory lien that is a far cry from the possessory lien he currently enjoys. Accordingly, in order to provide adequate protection that mirrors the protection provided for the creditor in *Moffett*, the Debtor, in exchange for the boat, will surrender title to the boat over to the creditor until the slip fees are paid in full. After the Debtor repays all slip fees to the creditor the creditor, shall return the title of the boat to the Debtor.

Finally, the outstanding amount of the slip fees remains to be determined. As discussed at the earlier hearing, the slip fees continued to accrue post-petition pending the resolution of the case. The entry of an Order for Default Judgment and an Order for Turnover of the boat by the Court on January 19, 2006, was a final resolution of this case. Accordingly, the Marina is only entitled to recover post-petition slip fees through that date. The Marina, as the wrongdoer, should not benefit from disobeying the court's Order.

## **CONCLUSION**

For the reasons set forth above, the Debtor is entitled to possession of the boat. Because the Debtor has made uncontested allegations in his Emergency Motion to Enforce Turnover Order that the creditor has failed to comply with the turnover order, the Debtor's motion to enforce the turnover order will be granted. Additionally, in order to provide adequate protection to the Marina, the Debtor will be required to surrender title to the boat until the satisfaction of the slip fees that accrued through January 19, 2006.

cc: Middle Branch Marina, Inc.
3101 Waterview Ave.
Baltimore, MD 21230

Resident Agent for Middle Branch Marina, Inc.
Xianting Cao
12504 Fellowship Ct.
Reisterstown, MD 21136

Antonio Aquia, Esquire
220 North Liberty Street
Baltimore, MD 21201

Willie B. Tripp
c/o Antonio Aquia, Esquire
220 North Liberty Street
Baltimore, MD 21201

Gerard R. Vetter, Trustee
7310 Ritchie Highway
Empire Towers, Suite 715
Glen Burnie, Maryland   21061

Office of the U.S. Trustee
2625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland   21201

**END OPINION**